70 U.S. 377
 18 L.Ed. 255
 3 Wall. 377
 BROWN
v.
TARKINGTON.
 December Term, 1865
 
 THIS was a writ of error to the Circuit Court of the United States for the District of Indiana.
 The case was this: The suit was brought by Brown, the plaintiff in error, to recover against Tarkington and others, defendants, the amount of four promissory notes, and another small sum, in the aggregate exceeding twelve thousand dollars. The defendants were stockholders in the Bank of Tekama, in the Territory of Nebraska, organized under a charter granted by the legislature, February 13, 1857. The notes were signed by its president, S. L. Campbell.
 By an act of Congress passed July 1, 1836, it was provided, 'that no act of Territorial legislature of any of the Territories of the United States, incorporating any bank, or any institution with banking powers and privileges, hereafter passed, shall have any force or effect whatever, until approved and confirmed by Congress.' The charter of this bank, as already observed, was passed in 1857. Three of the notes were given on the 9th June, 1858, and the fourth on the 28th April of the same year. The consideration of the three notes of the 9th of June, was for a balance due the plaintiff from the Bank of Tekama on a settlement of accounts; and of the other, for moneys advanced to Campbell, the president, to enable him to redeem the paper of the bank in circulation.
 Much evidence was given, in the course of the trial, tending to prove that the plaintiff was connected with the officers and directors of the bank in conducting its operations, in aiding and assisting, personally, and by his credit and means, to extend the circulation of its bills; and also tending to prove that the plaintiff was familiar with the charter of the bank, and the articles of association, and knew of the illegality of the association, and participated, in common with the officers and directors, in very unscrupulous, if not fraudulent contrivances, to keep up the credit of the bank and its bills, to the injury and loss of the business public, after they had knowledge of its utter insolvency and inability to redeem the paper already in circulation.
 Indeed, it was apparent from the evidence that the institution possessed very little, if any, capital, during the whole term of its existence. The nominal capital was $300,000, divided into shares of one hundred dollars each, payable in instalments of ten dollars each. The third, fourth, fifth, sixth, seventh, eighth, ninth, and tenth instalments were made due and payable at such times as the board of directors might designate. The bank began business in September, 1857, and ceased in the May following, with an outstanding circulation of its bills of some ninety thousand dollars.
 In the course of the trial the plaintiff read without objection the deposition of Campbell; and, of course, being thus read, no exception was taken to it. The record however disclosed the fact that at a former term there had been a motion to suppress and exclude this deposition, as not having been taken in conformity with the 30th section of the Judiciary Act of 1789, under which the counsel moving to suppress, assumed it to have been taken; and disclosed also the fact that the motion had been overruled.
 At the trial, the court below, after referring to the act of Congress forbidding the Territorial legislature to pass any law chartering a bank without its consent, and to the violation of this organic law in the present charter, and to the facts which had been proved, instructed the jury that the charter and the organization of the bank under it, as well as the banking business conducted and carried on through the means of this organization, were all illegal and void; and that if the plaintiff's participated in these transactions, aiding and assisting the officers and directors in giving credit to the bank, and to its bills in circulation, thereby co-operating in the imposition and fraud upon the business community, with a knowledge of the illegality of the charter and of the organization of the bank, and that the consideration of the notes in question grew out of these illegal transactions, he was not entitled to recover.
 Verdict and judgment went accordingly for the defendants.
 On error here, Mr. G. M. Lee, for the plaintiffs, contended that various instructions requested below and which he presented, but which, as having been aside from the ground on which the case was put before the jury, need not perhaps, here, by the reporter, be particularized—were not given by the court below, as asked. He argued further that the charge as given was, in itself, wrong: for conceding argumenti grati a, what was otherwise not to be conceded,—to wit, that the bills of the Tekama Bank as originally issued were not obligatory on the persons by whose authority they were put forth—still that here the plaintiff, in so far as he lent his money to the defendants to enable them to pay debts, and the payment of which was not illegal whatever the incurring of them might have been—was not censurable, but, contrariwise, praiseworthy; that here too was a promise, not the immediate nor necessary offspring of the old acts, nor tainted by their infirmity, if they had any; and that thus standing on its own and on new ground, such promise was good.* He contended that the court below had disregarded the purpose to which part of the money was applied, and disregarded the new and independent promise; and by charging, substantially, that if the plaintiff had furnished funds to enable the bank to do business he could not recover, had cast into the background or out of view entirely, one of the most salient and distinguishing features of the case; herein, he argued, committing error in the charge.
 Mr. Eames, contra.
 Mr. Justice NELSON delivered the opinion of the court.
 
 
 1
 We perceive no valid objection to the charge given by the learned judge below. It referred to the facts with great particularity and accuracy. The principle of law which it laid down is familiar, and the evidence in the case called for its application. The illegality of the charter of the bank, and of the organization under it, as well as the business of banking conducted through its means, were matters not in controversy upon the evidence. The only material question open was, whether or not the plaintiff was particeps criminis? If he was, he was disabled, under the maxim, to recover. The law leaves the party thus situated where it finds him. If either has sustained loss by the bad faith of his associates, it is but a just punishment for the illegal adventure.
 
 
 2
 To the argument of the counsel for the plaintiff—that admitting the banking transactions to be illegal, yet that the settlement of the balance and giving notes for the same purged the new promise, as he calls it, from the original taint—the answer is, that the new promise is founded upon the illegal consideration; a debt or demand growing out of the illegal transactions: and is as infirm, in the eye of the law, as the implied promise that existed previous to the giving of the notes.
 
 
 3
 There were several prayers for instructions on the part of the plaintiff, which were refused in the form presented. Most of them were irrelevant and immaterial, and neither even alluded to the ground upon which the case was placed before the jury. The court embraced in its charge all that was material or pertinent in the instructions prayed for.
 
 
 4
 It is also insisted for the plaintiff that the deposition of S. L. Campbell, the president of the bank, was improperly admitted on account of an irregularity in taking it under the act of Congress. It appears that a motion had been made, at a previous term of the court, to set aside this deposition on the ground stated; which was denied. On the trial, when the deposition was offered, no objection was made to it. The question, therefore, is not in the bill of exceptions; on the contrary, if any valid objection existed, it was waived by not taking advantage of it at the trial.
 
 
 5
 JUDGMENT AFFIRMED.
 
 
 6
 [See Orchard v. Hughes, 1 Wallace, 73; Brooks v. Martin, 2 Id. 70.—REP.]
 
 
 
 *
 Petrie v. Hannay, 3 Term. 418; 6 Id. 410; Bird v. Appleton, 8 Id. 562; Faikney v. Reynous, 4 Burrow, 2069; Farmer v. Russell, 1 Bosanquet & Puller, 296; Ex parte Bulmer, 13 Vesey, 313; Hodgson v. Temple, 5 Taunton, 181; Toler v. Armstrong, 4 Washington, 297; Armstrong v. Toler, 11 Wheaton, 258; Catts v. Phalen, 2 Howard, 376.